UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Village of Maineville, Ohio, et al, : Case No. 1:10-cv-690
:
    Plaintiffs, :
:
vs. :
:
The Hamilton Township, Ohio Board of :
Trustees, :
:
    Defendant. :

**ORDER**

Before the Court are cross-motions for summary judgment. Plaintiffs, the Village of Maineville and Salt Run, LLC, seek partial summary judgment on Counts 1 through 3 of their complaint. (Doc. 30) Defendant, the Hamilton Township Board of Trustees (hereinafter the "Township") moves for entry of judgment on all six of Plaintiffs' pending claims. (Doc. 25)

After the motions were briefed, Salt Run, LLC was granted leave to file an amended complaint to add additional plaintiffs. These additional plaintiffs are three entities that have membership interests in Salt Run, LLC, and three individuals who are officers and owners of those member entities. (See Doc. 40, Amended Complaint) The amended complaint and the addition of these plaintiffs did not add new claims for relief, and their presence does not require different analyses of the claims they allege. Therefore, for ease of reference, the Court refers to all of the Salt Run-related plaintiffs collectively as "Salt Run."

**FACTUAL BACKGROUND**

Salt Run owns property located in Hamilton Township, Ohio, and began to develop the property for eventual homebuilding.  In May 2007, the Township Trustees enacted Resolution No. 2007-0418, entitled "Amended Resolution Implementing Impact Fees Within Unincorporated Areas of Hamilton Township, Ohio for Roads, Fire and Police, and Parks."  The impact fees were assessed based on the intended use of the land (e.g., single-family dwelling, hotel, commercial, etc.).  According to the ordinance, the fees were intended to offset the Township's costs to provide increased services and improvements in the four categories that were identified in the title of the resolution. The Township intended to collect the fee whenever a property owner applied for a zoning certificate for new construction or redevelopment.

After the Township passed the resolution, Salt Run sought annexation of its land into the adjoining Village of Maineville under annexation procedures set forth in Ohio Rev. Code 709.023.  After the Warren County Commissioners approved the annexation in January 2009, the Township filed a mandamus action in state court challenging that decision.  The trial court dismissed the suit and the court of appeals affirmed, finding that the Township lacked standing to challenge the county commissioners' decision. See State of Ohio ex rel Hamilton Township Board of Trustees v. Warren County Board of Comm'rs, Case No. CA2009-07-100 (12th Dist. Ct. App., March 1, 2010).  After the annexation, Salt Run's property fell within the incorporated area of the Township, and was subject to the Village of Maineville's zoning requirements and permit authority. Maineville granted Salt Run's application to rezone its property for R3 residential use in February 2010.

After the trial court had dismissed the Township's mandamus action challenging the annexation, the Township's Community Development Director, Gary Boeres, executed an "affidavit of facts relating to title" under Ohio Rev. Code 5301.252.  That affidavit described the Township's adoption of the impact fee resolution, which provided that the impact fees would run with the land.  Boeres stated that the Maineville annexation occurred after the Township's ordinance was adopted.  The affidavit asserted the Township's claim to a "continuing and subsisting lien on the property ... for the payment and collection of the impact fees at the time that any impact-generating development of the described real property" should occur.  The final paragraph provided contact information for anyone who acquired an interest in the property to obtain subordination of the lien, if the acquisition of the property was not an impact fee generating event. (See Doc. 25, Exhibit B)  On October 30, 2009, the Township recorded the affidavit in the county land records with respect to Salt Run's property.

Sometime prior to the recording of this affidavit, Salt Run had entered into an agreement with a home builder (M/I Homes) to develop lots on its property.  M/I's title search revealed Boeres' affidavit, and in order to satisfy M/I's concern about a potential cloud on the title, Salt Run was required to escrow funds to cover any liability for the impact fees that might be assessed on the developed lots.  Salt Run demanded that the Township withdraw the affidavit, but that demand was rejected.

Salt Run, joined by the Village of Maineville, then filed a complaint in the state common pleas court alleging six claims against the Township: Salt Run's slander of title (Count One); two counts for declaratory relief filed by all plaintiffs generally challenging the impact fees and the Boeres affidavit with respect to Salt Run's property (Counts

Two and Three); a Section 1983 claim by Salt Run alleging an unconstitutional taking of its property (Count Four); Salt Run's claim for "falsification" (Count Five); and Salt Run's claim of selective enforcement (Count Six). The Township removed the case to this Court on the basis of federal question jurisdiction arising from Count Four. After discovery, the parties filed the pending cross-motions for summary judgment.

While these events regarding Salt Run's property were unfolding, a coalition of home builders and developers challenged the Township's impact fee ordinance in a lawsuit brought in the Warren County, Ohio common pleas court. (Those builders had paid the fees under protest when applying for Township zoning certificates. Salt Run was not involved in that litigation.) The state trial court granted the Township summary judgment, rejecting the builders' claims that the Township acted unlawfully in imposing the fees. The Ohio Court of Appeals affirmed. See Drees Company v. Hamilton Township, Ohio, 2010 Ohio 3473, 2010 Ohio App. LEXIS 2939 (12th Dist. App., July 26, 2010).

However, the Ohio Supreme Court granted the plaintiffs' petition for discretionary review on December 15, 2010. See Drees Company v. Hamilton Township, 127 Ohio St.3d 1460 (2010). This Court stayed this matter and its consideration of the parties' cross-motions for summary judgment pending the Supreme Court's decision. In May 2012, the Supreme Court reversed the lower court's judgment in favor of the Township. It found that the Township, an Ohio limited home rule township, was prohibited from imposing development "impact fees" because in reality, the fees were a tax, and the Township lacked taxing authority under Ohio statutes. See Drees Company v. Hamilton Township, 132 Ohio St.3d 186, 2012 Ohio 2370 (2012).

After that decision was announced, the Court held a status conference with the parties on July 3, to discuss whether the decision resolved the pending motions. The parties generally agreed that the decision resolves the motions with respect to Counts Two and Three, the claims for declaratory relief aimed at the impact fee resolution. As the Township's fee resolution is now invalid, the Township informed the Court that it would be withdrawing the Boeres affidavit. The Court therefore grants Plaintiffs' motion on Counts Two and Three insofar as those claims sought a declaratory judgment that the Township cannot collect impact fees on Salt Run's property; that impact fees cannot constitute a lien upon any real estate annexed into the Village of Maineville; and that the Boeres affidavit is void ab initio. The Court finds that the balance of the declaratory relief sought concerning alleged conflicts with Maineville's zoning resolution, or the extent of the Township's ability to "regulate" annexed property, are moot. Moreover, any decisions on those questions of state law would be purely advisory at this point.

The parties disagreed that the Supreme Court's decision resolved Salt Run's individual claims for damages set forth in Counts One and Four through Six, and Salt Run asked the Court to issue its decision.

**ANALYSIS**

1.  <u>Summary Judgment Standards</u>

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of an undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported

summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

The court construes the evidence and draws all reasonable inferences in favor of the non-moving party. Martin v. Cincinnati Gas & Elec. Co., 561 F.3d 439, 443 (6th Cir. 2009).

2.  Slander of Title

In Count One of its complaint, Salt Run alleges that the recording of the Boeres affidavit slandered its title to the property. A slander of title action may be brought against anyone who "falsely and maliciously defames the property, either personal or real, of another, and thereby causes him some special pecuniary damage or loss." Green v. Lemarr, 139 Ohio App.3d 414, 430 (Ohio App. 2000). To prevail on this tort claim, Salt Run must prove: "(1) there was a publication of a slanderous statement

-6-

disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." Id. at 430-431 (internal citation omitted). The court noted in Green that slander of title claims typically involve documents claiming an interest in the property, such as mortgages, judgment liens, or executed purchase agreements.

For example, in Childers v. Commerce Mortgage Inv., 63 Ohio App.3d 389 (Ohio App. 1989), the plaintiff-homeowners applied for a second mortgage with a company that agreed to loan them the money. To secure the loan, the homeowners executed a promissory note and delivered it with the mortgage deed on the property to that company. The homeowners never received the funds, and so 90 days later they wrote the company to cancel their application, believing they had properly done so. Unbeknownst to the homeowners, however, the company had already sold their unfunded loan to the defendant, CMI. And CMI had recorded the mortgage despite its actual knowledge that the loan had never been funded. When the homeowners were unable to sell the property because the mortgage lien had been recorded, they sued CMI for slander of title. The court found that the act of recording the mortgage when CMI knew that no loan funds had ever been disbursed was malicious and done in reckless disregard of the homeowners' rights. The court of appeals affirmed the judgment in favor of homeowners.

Here, Salt Run contends that the Boeres affidavit was filed after the annexation of its property into Maineville. Boeres testified that the Township "... is always trying to formulate ways to prevent annexations from happening." (Boeres Deposition at 38.) Salt Run argues that the fact of recording after annexation establishes the Township's

malicious intent, because the Township had no legal authority to assert that fees would be owed on annexed property, and the recording could only have been intended to create a cloud on the property to "leverage" collection of the fees.

The Township responds that the affidavit is not actionable slander against Salt Run's title. The statements in the affidavit are facts that were true when the affidavit was filed. The affidavit recites the Township's adoption of the impact fee ordinance, and that the ordinance itself provides that the fees run with the land. And it states that in the Drees Company case, the parties had stipulated that the impact fees are a lien upon property that runs with the land. The affidavit identified the properties that were annexed into Maineville after the adoption of the resolution, and stated that the Township "claims a continuing and subsisting lien on the property" for payment of the fees at the time that impact-generating development occurs. None of these factual statements were false. The Township also contends that its open opposition to annexations within the Township is not illegal, and no reasonable inference of malice or reckless disregard can arise from the Township's publicly announced position on an public issue of interest to the Township.

Regardless of the merits of Salt Run's claim, the Township's motion for summary judgment argues that it is statutorily immune from the slander of title claim. Ohio Rev. Code 2744.02(A)(1) grants broad immunity to political subdivisions from liability for injury "caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Section 2744.02(B) sets forth five exceptions to this broad immunity: (1) an employee's negligent operation of a motor vehicle; (2) an employee's negligent performance of acts

related to proprietary functions of the political subdivision; (3) negligent failure to repair roads; (4) negligence with respect to property and buildings used for governmental functions; and (5) a catchall provision for liability that is expressly imposed by other statutes.  The Township argues that none of these exceptions apply to its decision to record the Boeres affidavit.  It cites United States Construction Corp. v. Danbury Township, 2002 Ohio 3428 at ¶¶18-19, 2002 Ohio App. LEXIS 3451 (Ohio App. 2002), where the trial court apparently found that a township was immune from a slander of title claim.  This trial court ruling was not raised in the appeal, however, and the Ohio court of appeals did not address the question of immunity.

      O.R.C. 2744.01(C)(2), which defines governmental functions for purposes of immunity, includes the "enforcement" of any township ordinance or resolution.  When the Boeres affidavit was filed, the Township's impact fee ordinance was in effect and had been upheld by the Warren County Common Pleas Court in Drees Company.[1]  This Court concludes that the decision to enforce the ordinance against Salt Run's property by recording the affidavit was a governmental, not a proprietary function, and  does not fall within any of the five statutory exceptions.

      Salt Run disagrees, arguing that the "real reason" the affidavit was filed was to dissuade other property owners from pursuing annexations, and to pressure Salt Run to pay the fees.  It also argues that the act of filing an affidavit of title is not a strictly governmental act, but one that all types of nongovernmental actors regularly engage in.

---

[1] See Drees Company v. Hamilton Township, Case No. 07CV70181, record entry of September 30, 2009 stating partial summary judgment granted to the Township; available at www.co.warren.oh.us/clerkofcourt/search, last accessed September 26, 2012.

Salt Run cites Railroad Ventures, Inc. v. Drake, 138 Ohio App.3d 315 (Ohio App. 2000), where a landowner brought tortious interference and slander of title claims against a county port authority, based on its efforts to prevent the landowner from abandoning a railroad line that ran through its property. Salt Run's reliance on this case is misplaced. The governmental conduct at issue in that case was clearly a proprietary function. It fell within the statutory definition of proprietary function that is set forth in O.R.C. 2744.01(G)(2)(c), which includes the establishment, maintenance and operation of a railroad. The port authority's attempts to prevent abandonment of the line by petitioning the Surface Transportation Board to stay the landowner's attempt to abandon the line or to declare its ownership void, were all attempts to "maintain" the railroad line, and thus were the proprietary acts of the port authority.

The court therefore proceeded to the third step of statutory immunity analysis (articulated in Cater v. Cleveland, 83 Ohio St.3d 24, 28 (1998)), and determined whether Section 2744.03(A) provided a defense that reinstated the port authority's immunity. The court of appeals affirmed the trial court's conclusion that the port authority and its director were entitled to immunity under that statute, because the acts in question were within the discretion of the authority's employees with respect to policy-making, planning and enforcement, and were not manifestly outside the scope of the employees' official duties. Here, however, the Court need not reach the third step of the statutory immunity analysis, or consider any potential defenses under Section 2744.03(A), because none of the five statutory exceptions to blanket immunity set forth in O.R.C. 2744.02(B) apply to Salt Run's claim.

There is no doubt that the Township intentionally filed the affidavit. Boeres

-10-

testified that the Township's law director prepared the affidavit and gave it to him to sign. The affidavit states it was prepared by an attorney. All of the specific exceptions to political subdivision blanket immunity concern negligent acts, and there is no specific exception for an act amounting to an intentional tort unless the conduct at issue otherwise falls within one of the exceptions. That was the case in Railroad Ventures as those intentional acts by the port authority were proprietary acts. Numerous cases have reached the same conclusion. See Thornton v. City of Cleveland, 176 Ohio App.3d 122, 126 (Ohio App 2008), noting that "[b]ecause R.C. 2744.02(B) includes no specific exceptions for intentional torts, courts have consistently held that political subdivisions are immune from intentional tort claims." See also, Davis v. City of Akron, 2005 Ohio 3629, 2005 Ohio App. LEXIS 3353 (Ohio App. 2005), dismissing a police detective's intentional tort claim against the city, based on plaintiff's exposure to toxic chemicals in the course of her employment, because no exception listed in O.R.C. 2744.02(B) applied to her claim. And see Farra v. Dayton, 62 Ohio App.3d 487 (Ohio App. 1989), affirming dismissal of plaintiff's intentional interference with business relationships claim against the city, based on city employees' communications with plaintiff's tenants, telling them they were required to vacate plaintiff's apartment building. The statements were made in connection with the city's urban renewal efforts, a governmental function, and the city was therefore entitled to statutory immunity.

Given these authorities, the Court concludes that Salt Run's slander of title claim must be dismissed because Hamilton Township is entitled to statutory immunity pursuant to Ohio Rev. Code 2744.02(A).

3.  Section 1983 Claim.

Count Four of the complaint alleges that the recording of the affidavit and the Township's efforts to place a lien upon Salt Run's property, deprived Salt Run of its rights under the 5th and 14th Amendments. Salt Run also alleges that the Township's conduct was "designed to intimidate other property owners within the unincorporated areas of the Township from exercising their statutory right to annex." (Doc. 40 at ¶57)

The Township seeks entry of judgment on this claim, contending that Salt Run has not alleged a plausible Fifth Amendment taking of its property, the inadequacy of available state remedies for such a taking, nor alleged any cognizable denial of its due process rights. In its response, Salt Run does not offer any argument concerning due process, but contends that triable issues of fact exist concerning its claim for a "non-categorical taking" of its property. Salt Run cites the testimony of Don Misrach (the president of one of Salt Run's member companies) that impact fees impose a cost on the property that must be paid by someone, but that in his opinion do not result in a corresponding benefit to the end user, the ultimate home buyer. Misrach also claimed that his company's sales "dried up" after the impact fees were imposed, and that other builders did not want to deal with Salt Run after the Township's affidavit was filed.

Salt Run concedes that the impact fee affidavit did not deprive it of **all** economically beneficial use of the land, such that a total regulatory taking occurred. A partial, or non-categorical taking, may result when a governmental regulation prevents the property owner from some, but not all, economic use of the land. See, e.g., Penn. Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978), noting that the "extent to which the regulation has interfered with distinct investment-backed expectations" is a relevant consideration in determining whether a partial, compensable

taking has occurred. Salt Run's amended complaint alleges that the Boeres affidavit, asserting a lien on its property, resulted in a default under the terms of Salt Run's development loan with Fifth Third Bank, and that the bank has required Salt Run's owners and guarantors to execute a cognovit note and make additional accelerated payments. Salt Run was also required to escrow the amount of the impact fees in order to proceed with its lot development agreement with M/I Homes.

It is doubtful that these allegations support a plausible claim for a actionable partial taking. The impact fee resolution, which the Township attempted to enforce through the affidavit, did not unduly restrict Salt Run's intended use of its property, to build homes. An ordinance that effectively reduces the land's value, as the impact fee arguably does by imposing an additional development cost, does not result in a compensable taking absent a sufficiently severe loss. See, e.g., Loreto Dev. Co. v. Village of Chardon, 1998 U.S. App. LEXIS 12183 (6th Cir. 1998)(unpublished), rejecting a challenge to the denial of a zoning variance that the plaintiff alleged was a partial taking of its property. The court noted that the refusal to re-zone the property did not prohibit the plaintiff from using the property in a manner it should have reasonably expected, although plaintiff lost the opportunity for greater profit from its proposed development. And see, Harris v. City of St. Clairsville, 2006 U.S. Dist. LEXIS 92523, at **50-53 (S.D. Ohio, Dec. 21, 2006), aff'd, 2008 U.S. App. LEXIS 8869 (6th Cir. 2008), rejecting takings claim based on rezoning of plaintiff's property, because it did not restrict the economically viable uses of his land, and noting that a partial taking does not occur simply because the owner is denied the "highest and best use" of the property.

But even if these allegations suffice to raise a genuine dispute that Salt Run

suffered a compensable partial taking, the Township correctly argues that Salt Run must exhaust available state remedies before prosecuting a federal takings claim. The Supreme Court has held that "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985). Ohio provides a procedure to challenge an allegedly unconstitutional taking: a state mandamus action. In State ex rel Duncan v. City of Mentor City Council, 105 Ohio St.3d 372 (2005), the Ohio Supreme Court held that a mandamus action is the proper vehicle to challenge the City's denial of a building permit as an unconstitutional taking. See also, State ex rel BSW Dev. Group v. Dayton, 83 Ohio St.3d 338 (1998), finding that plaintiff's challenge to the denial of a demolition permit alleged to be a regulatory taking of property was properly brought as a mandamus action.

Moreover, in Coles v. Granville, 448 F.3d 853, 860-861 (6th Cir. 2008), the Sixth Circuit held that an Ohio mandamus action is a "reasonable, certain and adequate" procedure to challenge local governmental regulatory takings. And in Silver v. Franklin Township, 966 F.2d 1031, 1035 (6th Cir. 1992), the court found that plaintiff's Section 1983 claim challenging a township's denial of a zoning permit was not ripe because plaintiff did not pursue state remedies to challenge the alleged taking.

Salt Run claims that it is "mystified" about what "remedies" the Township might have afforded to challenge the affidavit, suggesting that the impact fee resolution "amounted to a local fiat." (Doc. 35 at 18) It also contends that any "administrative

-14-

remedies" would have been ineffectual.  Whether or not Salt Run was aware of potential "administrative remedies" is irrelevant, because well-established law gave it both the right and the vehicle with which to challenge the imposition of impact fees on its property.  Salt Run did not pursue a mandamus action against the Township when the impact fee resolution was adopted, but instead sought annexation of its property into Maineville.  When the Boeres affidavit was filed, Salt Run did not seek mandamus relief to challenge the Township's action, but brought a Section 1983 claim.  The authorities discussed by the Sixth Circuit in Coles v. Granville, supra, make it clear that Salt Run's constitutional claim is not ripe for consideration by this Court.  The Township is therefore entitled to summary judgment on Count Four of Salt Run's complaint.

4.  Falsification

The Township seeks judgment on Count Five of Salt Run's complaint, alleging that the recording of the affidavit is an actionable "falsification" under Ohio Rev. Code 5301.252(E) and 2921.13(A)(6).  Section 5301.252(E) is a subsection of the statute entitled "Affidavits on facts relating to title."  This statute authorizes the recording of an affidavit setting forth facts that may affect title to real estate by a person with knowledge of those facts.  Examples include facts regarding family status and identity of parties; possession; events that may create or terminate an interest in land; location of monuments and physical boundaries; and facts that are set forth in a registered surveyor's affidavit about ambiguities in recorded land descriptions.  Salt Run relies on subsection (E) that states: "Any person who knowingly makes any false statement in any affidavit provided for in this section is guilty of falsification" pursuant to Ohio Rev. Code 2921.13(A)(6).

Ohio Rev. Code 2921.13 is part of Ohio's criminal code and is entitled "Falsification; in theft offense; to purchase firearm; to obtain concealed handgun license." Subsection 2921.13(A)(6) states that no person "shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when ... (6) The statement is sworn or affirmed before a notary public...". A violation is a misdemeanor of the first degree.

The Township argues that an independent civil claim for falsification, absent criminal charges, is not recognized in Ohio law. In Hershey v. Edelman, 187 Ohio App.3d 400 (Ohio App. 2010), for example, a dispute arose after plaintiff delivered 270 cases of jackets to a commercial embroiderer. The jackets were missing when plaintiff returned to retrieve them, and he eventually tracked the jackets to the defendant, who told plaintiff that his company bought them from the embroiderer to satisfy a prior debt. Plaintiff then filed a police report that the jackets had been stolen by the defendant, and subsequently filed a civil replevin action. The defendant counterclaimed for falsification based on the police report, relying on Ohio Rev. Code 2921.13(G), a provision of the criminal falsification statute stating that a person violating that statute "is liable in a civil action to any person harmed by the violation" for loss to property. The court of appeals affirmed the trial court's dismissal of defendant's falsification claim, holding that O.R.C. 2921.13 is a criminal statute and that no Ohio authority permits an **independent** civil falsification action in the absence of criminal charges.

Similarly, in Whelan v. Vanderwist of Cincinnati, Inc., 2011 Ohio 6844, 2011 Ohio App. LEXIS 5662 (Ohio App. 2011), the court held that O.R.C. 2921.13 is a criminal statute that does not give rise to a civil cause of action. See also, Howard v. Supreme

Court of Ohio, 2005 Ohio 2130, 2005 Ohio App. LEXIS 2012 (Ohio App. 2005), dismissing a civil falsification claim. Salt Run cites no contrary authorities, and relies on the same argument that was rejected by the court of appeals in Hershey v. Edelman. The Township is therefore entitled to judgment on Salt Run's falsification claim.

5.  Selective Enforcement

In Count Six of the complaint, Salt Run alleges that the Boeres affidavit was recorded only with respect to properties that were annexed, and not to any other property that remained within the unincorporated Township's boundary. Salt Run alleges that this "selective enforcement" was unlawful by intentionally discriminating against property owners who had successfully sought annexation.

The elements of a selective enforcement or prosecution claim were set forth in United States v. Anderson, 923 F.2d 450 (6th Cir. 1991): "First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to." Id. at 453. And in Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000), the court held that a selective enforcement claim is evaluated under "ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect."

Salt Run suggests that the Township's decision to record affidavits only against annexed properties, and not against non-annexed properties, satisfies the first element

of showing that enforcement of the fee ordinance was pursued only against a "disfavored minority" of property owners who pursued annexation. The Township responds that recording the Boeres affidavit was not an attempt to selectively enforce the impact fee ordinance, and in any event did not amount to a penalty imposed only against Salt Run. Salt Run itself states that the Township collected over $2 million in impact fees from property owners within the Township, a fact that does not support Salt Run's contention that the impact fee **resolution** was selectively enforced only against annexed properties. This is reflected in <u>Drees Company</u>, <u>supra</u>, 132 Ohio St.3d at 188, where the Ohio Supreme Court noted that the plaintiffs in that case had each paid the Township's impact fees under protest in order to obtain zoning permits. The record therefore establishes that the Township was enforcing its resolution against all Township properties, both annexed and non-annexed. The Township was no doubt attempting to enforce the impact fee ordinance against Salt Run's annexed properties by utilizing a different procedure from that used for non-annexed properties, which was to collect the fee with a zoning permit application. But that different enforcement mechanism for the same ordinance does not support Salt Run's allegation that the Township selectively enforced its impact fee ordinance against Salt Run in a manner that in any way violated its Equal Protection rights.

## CONCLUSION

For all of the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for summary judgment (Doc. 30). Salt Run and the Village of Maineville are entitled to judgment on Counts Two and Three of the amended complaint

to the extent that those counts sought declaratory and injunctive relief against enforcement of Hamilton Township's impact fee ordinance, and a declaration that the Boeres affidavit is void ab initio.  The balance of the relief sought in those Counts is denied as moot.  Salt Run is not entitled to judgment on its slander of title claim.

Hamilton Township's motion for summary judgment (Doc. 25) is granted in part, as the Township is entitled to entry of judgment against Salt Run on Counts One, Four, Five and Six of the amended complaint.  The Township's motion for judgment with respect to Counts Two and Three is denied, insofar as the Township sought judgment on its right to enforce the Boeres affidavit.  The balance of the relief sought with respect to those Counts is denied as moot.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: October 10, 2012   s/Sandra S. Beckwith
                          Sandra S. Beckwith
                          Senior United States District Judge